Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| | | |
|---|---|---|
| JOSÉ A. MÁRQUEZ SÁNCHEZ<br><br>RECURRENTE<br><br>V.<br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN Y SU PROGRAMA DE SERVICIOS RELIGIOSOS<br><br>RECURRIDO | TA2025RA00400 | *Revisión Judicial* procedente del Departamento De Corrección y Rehabilitación de Ponce<br><br>Caso Núm. PP-332-25<br><br>Sobre: Libertad de Culto |

Panel integrado por su presidenta, la Juez Lebrón Nieves, el Juez, Pagán Ocasio y la Jueza Álvarez Esnard.

Pagán Ocasio, Juez ponente

# SENTENCIA

En San Juan, Puerto Rico, a 26 de febrero de 2026.

## I.

El 9 de diciembre de 2025, el señor José A. Márquez Sánchez (señor Márquez Sánchez o recurrente), quien se encuentra bajo la custodia del Departamento de Corrección y Rehabilitación (DCR), presentó, por derecho propio, un recurso de revisión judicial en el que nos solicitó que revoquemos la *Respuesta* emitida por la División de Remedios Administrativos del DCR, el 22 de octubre de 2025, recibida por la evaluadora el 23 de octubre de 2025 y notificada al recurrente el 27 de octubre de 2025.[1] En esta, el DCR respondió que el Programa de Servicios Religiosos está establecido de forma tal que pueda cumplir con ofrecer el servicio a todos los miembros de la población penal. Aclaró que estos servicios se brindan tanto en la

---

[1] Véase entrada núm. 2 del apéndice, de la entrada núm. 1 del recurso en el Sistema Unificado de Manejo y Administración de Casos del Tribunal de Apelaciones (SUMAC-TA). El recurso fue depositado en el correo postal para su envío el 26 de noviembre de 2025. Véase Anejo 1 de la entrada núm. 1 en el SUMAC-TA.

capilla, como en las áreas de vivienda, por el personal de capellanía semanalmente.

El 9 de enero de 2026, emitimos una *Resolución* en la que le concedimos al DCR un término de diez (10) días para que proveyera al recurrente la solicitud para declaración de indigencia (*In forma Pauperis*) y la entregara a este tribunal, una vez completada por el señor Márquez Sánchez.[2]

El 15 de enero de 2026, el recurrente presentó una *Solicitud y declaración para que se exima de pago de arancel por razón de indigencia* (Formulario OAT 1480).[3]

El 20 de enero de 2026, emitimos una *Resolución* en la que autorizamos al señor Márquez Sánchez a litigar *In forma Pauperis* y por derecho propio. Consecuentemente, le concedimos al DCR (parte recurrida) hasta el 30 de enero de 2026 para exponer su posición sobre los méritos del recurso.[4]

En cumplimiento con lo ordenado, el 30 de enero de 2026, el DCR, representado por la Oficina del Procurador General, presentó un *Escrito en Cumplimiento de Resolución* en el que solicitó que confirmemos la *Respuesta* recurrida.[5]

Contando con el beneficio de la comparecencia de las partes, damos por perfeccionado el recurso y pormenorizamos los hechos procesales más relevantes para su atención.

**II.**

Según consta del expediente digital ante nuestra consideración, con fecha del 23 de septiembre de 2025, el recurrente suscribió una *Solicitud de Remedio Administrativo* que fue presentada ante la División de Remedios Administrativos del DCR.[6]

---

[2] Entrada núm. 2 del expediente digital del caso en el SUMAC-TA.
[3] Íd., entrada núm. 3.
[4] Íd., entrada núm. 4.
[5] Íd., entrada núm. 5.
[6] Entrada núm. 3 del apéndice, pág. 1, de la entrada núm. 1 del expediente digital del caso en el SUMAC-TA.

En resumen, alegó que el DCR le ha infringido su derecho constitucional a la libertad de culto, limitado la práctica religiosa en la capilla de la institución a entre cuatro (4) a seis (6) horas a la semana. Arguyó que esto es contrario a lo que dispone el reglamento de capellanía, el cual establece que la capilla estará abierta siempre. Manifestó que, la libertad de culto no se limita solo al servicio religioso, sino que abarca más. Asimismo, arguyó que el cierre le ha afectado la vida espiritual, por lo que solicitó la apertura de la capilla durante la mañana y la tarde, y que se le garantice su derecho constitucional a la libertad de culto. Por último, sostuvo que el alegado cierre se trata de una discriminación por razón de religión.

Según la propia solicitud, se trata de un asunto planteado anteriormente, sin embargo, no se incluyó como parte del expediente determinación previa alguna.

El 22 de octubre de 2025, el Comandante de la Guardia del DCR emitió una respuesta dirigida a la evaluadora, la señora Brendaly Saldaña, para la notificación al señor Márquez Sánchez.[7] Mediante dicha respuesta, le informó al confinado que el Programa de Servicios Religiosos está establecido para cumplir con el servicio a todos los miembros de la población penal y que el mismo se brinda semanalmente por el personal de capellanía, tanto en la capilla como en las áreas de vivienda.[8] El 23 de octubre de 2025, la evaluadora proveyó al recurrido la respuesta a la solicitud de remedio.[9]

Inconforme con la respuesta, el señor Márquez Sánchez presentó el recurso de revisión judicial de epígrafe. El recurrente alegó que el DCR no le concedió un remedio adecuado a su solicitud, relacionada con el acceso a la capilla y al ejercicio de culto religioso.

---

[7] Entrada núm. 3 del apéndice, pág. 2, de la entrada núm. 1 del expediente digital del caso en el SUMAC-TA.
[8] Entrada núm. 2 del apéndice, de la entrada núm. 1 del expediente digital del caso en el SUMAC-TA.
[9] Entrada núm. 2 del apéndice, de la entrada núm. 1 del expediente digital del caso en el SUMAC-TA. Recibida por el recurrente el 27 de octubre de 2025.

Asimismo, adujo que la respuesta es arbitraria, irrazonable y contraria a derecho. Arguyó que no se consideró la obligación de la agencia de garantizar el derecho constitucional de libertad de culto de los confinados. Por ello, nos solicitó que se ordene al DCR reabrir la capilla institucional o adoptar medidas razonables que garantice el acceso continuo al lugar de oración.

Por su parte, el DCR presentó un *Escrito de Cumplimiento de Resolución* y nos solicita que confirmemos la respuesta recurrida. Alegó que la respuesta es razonable y se ajusta a la jurisprudencia y reglamentación aplicable. Señaló que los servicios religiosos, en la institución correccional en que se encuentra el recurrente, se ofrecen a través de la capilla en el horario aplicable y se extienden a las áreas de vivienda de la población, tal como respondió el DCR.

En cuanto al recurso, mencionó que el recurrente no imputó al DCR error de derecho alguno. En síntesis, arguyó que el *Reglamento del Cuerpo Interdenominacional de Capellanía del* DCR, Reglamento Núm. 7938 del 26 de octubre de 2010 ("Reglamento 7938"), garantiza al menos un lugar para el culto de la comunidad correccional, de acuerdo con las particularidades de cada institución y no una capilla en continua operación, como reclama el recurrente. Expuso que la posibilidad de destinar un lugar específico y exclusivo a los fines de proveer un espacio para el servicio religioso dependerá de los recursos y necesidades de cada institución correccional.

Además, argumentó que los confinados poseen aquellos derechos que no resulten incompatibles con el confinamiento y que pueden sufrir una disminución de sus derechos por las exigencias institucionales existentes en el régimen penal. Así, aludió a que según el propio Reglamento Núm. 7938, *supra,* la seguridad en las instituciones penales prima sobre la liberta de culto de la población que alberga. Arguyó que, si la limitación de horario de apertura de

la capilla obedece a falta de oficiales, como alega el recurrente, la respuesta recurrida merece la mayor deferencia de este tribunal.

**III.**

**A.**

La *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, Ley Núm. 38 de 2017, según enmendada, 3 LPRA secs. 9601 *et seq.* (LPAU), establece el alcance de la revisión judicial de las determinaciones de las agencias administrativas. A tenor de esta y la jurisprudencia aplicable, la revisión judicial consiste, esencialmente, en determinar si la actuación de la agencia se dio dentro de las facultades que le fueron conferidas por ley, si es compatible con la política pública que la origina y si es legal y razonable. ***Capó Cruz v. Junta de Planificación***, 204 DPR 581, 590-591 (2020); ***Rolón Martínez v. Supte. Policía***, 201 DPR 26, 35 (2018).

El foro apelativo deberá ser deferente a las determinaciones de los organismos administrativos, en consideración a la experiencia y al conocimiento especializado que estas poseen sobre los asuntos que le fueron delegados. ***Katiria's Café, Inc. v. Municipio Autónomo de San Juan***, 2025 TSPR 33, 215 DPR __ (2025) (resuelto el 27 de marzo de 2025); ***Rolón Martínez v. Supte. Policía***, supra; ***Torres Rivera v. Policía de PR***, 196 DPR 606, 626 (2016).

Sin embargo, recientemente, el Tribunal Supremo, en ***Vázquez v. Consejo de Titulares***, 216 DPR ___ (2025), 2025 TSPR 56 (resuelto el 21 de mayo de 2025), haciendo eco de lo resuelto en ***Loper Bright Enterprises v. Raimondo***, 603 U.S. 369 (2024), dictaminó que la interpretación de la ley es una tarea que corresponde inherentemente a los tribunales. De esa manera, enfatizó la necesidad de que los foros judiciales, en el ejercicio de su función revisora, actúen con el rigor que prescribe la LPAU. ***Vázquez***

*v. Consejo de Titulares*, supra. Por ello, se pautó que será deber de los tribunales revisar las conclusiones de derecho en todos sus aspectos, por los mecanismos interpretativos propios del Poder Judicial y no guiados por la deferencia automática. *Vázquez v. Consejo de Titulares*, supra.

Por ello, las decisiones de las agencias administrativas gozan de una presunción de regularidad y corrección. *Capó Cruz v. Jta de Planificación et al.,* 204 DPR 581, 591 (2020); *Rolón Martínez v. Supte. Policía,* supra; *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 892 (2008). La presunción de corrección que acarrea una decisión administrativa deberá sostenerse por los tribunales a menos que la misma logre ser derrotada mediante la identificación de evidencia en contrario que obre en el expediente administrativo. *Misión Ind. P.R. v. J.P.,* 146 DPR 64, 130 (1998).

Al momento de revisar una decisión administrativa, el criterio rector para los tribunales será la razonabilidad en la actuación de la agencia. *Otero v. Toyota,* 163 DPR 716, 727 (2005); *Rebollo v. Yiyi Motors,* 161 DPR 69, 76 (2004). Cónsono con ello, será necesario determinar si la agencia actuó de forma arbitraria, ilegal o de manera tan irrazonable que su actuación constituyó un abuso de discreción. *Rolón Martínez v. Supte Policía,* supra; *Rebollo v. Yiyi Motors,* supra.

La deferencia concedida a las agencias administrativas únicamente cederá cuando: (1) la determinación administrativa no esté basada en evidencia sustancial; (2) el organismo administrativo haya errado en la aplicación o interpretación de las leyes o los reglamentos que se le ha encomendado administrar; (3) cuando el organismo administrativo actúe arbitraria, irrazonable o ilegalmente, al realizar determinaciones carentes de una base racional; o, (4) cuando la actuación administrativa lesione derechos constitucionales fundamentales. *Super Asphalt v. AFI y*

*otros,* 206 DPR 803, 819 (2021); ***Torres Rivera v. Policía de Puerto Rico,*** supra, pág. 628.

Dichos procedimientos se distinguen del proceso judicial ordinario al promover la flexibilidad y proveer un mecanismo más económico para que la ciudadanía reclame sus derechos. ***Acarón et al. v. D.R.N.A.***, 186 DPR 564, 583 (2012). No obstante, la flexibilidad e informalidad del proceso administrativo, es menester que los mismos cumplan con "las garantías mínimas que exige el debido proceso de ley, ya que las decisiones administrativas tienen el alcance de afectar los intereses propietarios o libertarios de las personas". Íd.

### B.

La División de Remedios Administrativos del DCR se estableció con el propósito principal de proveerles a los miembros de la población correccional un organismo administrativo al cual puedan recurrir en primera instancia mediante una solicitud de remedio. A tenor con dicho fin, el *Reglamento para Atender las Solicitudes de Remedios Administrativos Radicadas por los Miembros de la Población Correccional* del DCR, Reglamento Núm. 8583 del 4 de mayo de 2015 (Reglamento Núm. 8583), establece el procedimiento para atender las solicitudes de remedios presentadas por las personas recluidas en las instituciones correccionales de Puerto Rico, que se atenderán ante la División de Remedios Administrativos.

La División de Remedios Administrativos del DCR posee jurisdicción para atender toda Solicitud de Remedio radicada por los miembros de la población correccional sobre cualquier incidente o reclamación comprendida bajo las disposiciones del reglamento. Regla VI del Reglamento Núm. 8583, *supra,* pág. 13. Una solicitud de remedio es un recurso que presenta un miembro de la población correccional por escrito sobre una situación que afecta su calidad

de vida y seguridad relacionado con su confinamiento. Regla IV (24) del Reglamento Núm. 8583, *supra*, pág. 10.

**C.**

El Reglamento Núm. 7938, *supra*, creó el Programa Interdenominacional de Capellanía con el propósito de garantizar el derecho constitucional a la libertad de culto de los confinados. Véase, Introducción del Reglamento. Según este Reglamento, el referido programa tiene la responsabilidad de planificar y coordinar las actividades religiosas, en las instituciones correccionales de Puerto Rico, para los confinados. Íd. El Cuerpo Interdenominacional de Capellanía está sujeto a las disposiciones del reglamento y a las normas de seguridad y orden del DCR, de modo que se garantice a cada confinado el ejercicio de la religión de su preferencia, dentro del marco de seguridad institucional. Íd.

La persona encargada de estructurar, dirigir y supervisar la organización interna del programa es el director de capellanía. Artículo VII, inciso (5) del Reglamento 7938, *supra*, pág. 15. Específicamente, a este se le delega la responsabilidad de autorizar todas las actividades religiosas especiales de su área. Art. VII, inciso (8) del Reglamento 7938, *supra*. Dichas actividades deben ser recomendadas por el Capellán coordinador institucional. Íd. Finalmente, el Reglamento establece que, en aras de velar por la libertad de culto del miembro de la población correccional es responsabilidad del director de Capellanía evaluar toda clase de petición de servicio religioso que estos hagan a cada director en su respectiva área y asegurarse de que suple su necesidad espiritual, siempre teniendo en cuenta la seguridad institucional. Art. VII, inciso (14) del Reglamento Núm. 7938, pág. 17.

Según el propio reglamento, en cada institución se designará un área para la celebración de los servicios religiosos. Artículo XII del Reglamento Núm. 7938, pág. 27. Dentro de lo posible, se

proporcionará un área donde se ubique una capilla, de acuerdo con las facilidades de la institución. Íd. El lugar que se designe para llevar a cabo los servicios religiosos, será usado por todas las comunidades de fe, observando las normas del mismo Reglamento. Íd.

**IV.**

En el presente caso, a pesar de que no incluyó un señalamiento de error en su escrito, el recurrente parece cuestionar la respuesta emitida por la División de Remedios Administrativos del DCR con relación a los servicios de capellanía que se ofrecen en la institución correccional. Alega que, mediante dicha respuesta, se le negó o no se le concedió un remedio adecuado a su solicitud de acceso a la capilla y al ejercicio de culto. Es su postura que, cerrar una capilla por más de once (11) meses según alega, sin ofrecer alternativas equivalentes, constituye una limitación excesiva y no razonable.

De otra parte, el DCR arguye que existe la posibilidad de interrumpir cualquier servicio religioso celebrándose en la capilla de una institución correccional del DCR si por alguna razón su seguridad se viese comprometida, según lo establece el Reglamento Núm. 7938, *supra*. Alude a que la alegada falta de oficiales puede razonablemente provocar dicha interrupción. Así las cosas, sostiene que la respuesta es conforme a derecho y a las constancias del expediente de solicitud de remedios administrativos por lo que merece deferencia y debe ser confirmada.

Tras un análisis objetivo, sereno y cuidadoso del expediente, en correcta práctica adjudicativa apelativa, y a la luz de los criterios esbozados en la LPAU, *supra*, y la jurisprudencia aplicable, determinamos que corresponde confirmar la *Resolución* recurrida.

Sabido es que, al ejercer la facultad revisora de nuestro foro apelativo, debemos conceder una gran deferencia a las decisiones

emitidas por los organismos administrativos, puesto que ostentan vasta experiencia y conocimiento en los asuntos que le han sido encomendados.

En el caso de marras, el recurrente alega que la capilla lleva más de once (11) meses cerrada, sin otras alternativas. Evaluado la totalidad del expediente, se desprende de lo narrado por el señor Márquez Sánchez en la propia *Solicitud de Remedio Administrativo* que la capilla no está completamente cerrada, sino que semanalmente ofrece servicios para cumplir con toda la población correccional. Según este mismo alega, el DCR limita la práctica religiosa en la capilla a entre cuatro (4) a seis (6) horas a la semana.

Por lo cual, determinamos que la *Respuesta* recurrida no fue arbitraria, ilegal o irrazonable ni que constituya un abuso de discreción. No hay prueba en el expediente ante nuestra consideración, que nos lleve a concluir lo contrario. Por consiguiente, entendemos que la misma es razonable.

En el presente caso, concluimos que la *Solicitud de remedio* en cuestión fue atendida y respondida conforme al Reglamento Núm. 7938, *supra*. Dicho reglamento provee para la designación de al menos un lugar de culto, de acuerdo con las facilidades de la institución correccional. Mediante la respuesta recurrida, se le informó que los servicios religiosos son brindados semanalmente por el personal de capellanía tanto en la capilla como en las áreas de vivienda.

De lo que se desprende del expediente ante nuestra consideración, podemos colegir que al recurrente no se le limita o coarta su libertad religiosa, más allá de lo podrán ser las limitaciones por motivos de seguridad y vigilancia, aplicables a todos los confinados. Obsérvese que, el Tribunal Supremo ha expresado que, aunque los confinados no se encuentran del todo fuera del alcance de la Constitución "poseen aquellos derechos que no

resulten incompatibles [con el] confinamiento". ***Báez Diaz v. E.L.A.***, 179 DPR 605, 624-625, citando a ***Pueblo v. Falú Martínez***, 116 DPR 828, 836 (1986). Así pues, el recurrente tendrá disponible el acceso a la capilla institucional, en los días y horas programadas por la institución, para que pueda recibir los servicios religiosos que solicita.

En vista de lo anterior, concluimos que debemos otorgarle deferencia a la decisión recurrida; no avistamos evidencia alguna que derrote la presunción de corrección de la cual ésta goza.

**V.**

Por los fundamentos pormenorizados, se confirma la *Respuesta* recurrida.

**Notifíquese al Secretario del Departamento de Corrección**. **El Departamento de Corrección deberá entregar copia de esta *Sentencia* al señor Márquez Sánchez, en cualquier institución donde este se encuentre**.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones. La Juez Lebrón Nieves disiente con opinión escrita.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| JOSÉ A. MÁRQUEZ SÁNCHEZ<br><br>Recurrente<br><br>V.<br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN Y SU PROGRAMA DE SERVICIOS RELIGIOSOS<br><br>Recurrido | TA2025RA00400 | *Revisión de Decisión Administrativa* procedente del Departamento de Corrección y Rehabilitación<br><br>Caso Núm.: PP-332-25<br><br>Sobre: Libertad de Culto |
|---|---|---|

Panel integrado por su presidenta; la Juez Lebrón Nieves, el Juez Pagán Ocasio y la Jueza Álvarez Esnard

### VOTO DISIDENTE DE LA JUEZ LEBRÓN NIEVES

En San Juan, Puerto Rico, a 26 de febrero de 2026.

Ante nuestra consideración se encuentra un recurso de revisión judicial presentado por derecho propio, por el señor José A. Márquez Sánchez (en adelante parte recurrente o señor Márquez Sánchez), quien, por razón de su confinamiento, permanece bajo la custodia del Departamento de Corrección y Rehabilitación, en la institución Ponce Principal (en adelante, parte recurrida o DCR). Mediante su recurso, el recurrente nos invita a revocar la *Respuesta* emitida por la División de Remedios Administrativos del DCR, el 22 de octubre de 2025, recibida por la Evaluadora el 23 de octubre de 2025 y notificada al recurrente el 27 de octubre de 2025.[10] En el aludido dictamen, la agencia recurrida le denegó al recurrente su solicitud de la apertura continua de la capilla de la institución en la cual se encuentra confinado. La División de Remedios

---

[10] Véase entrada núm. 2 del apéndice, de la entrada núm. 1 del recurso en el Sistema Unificado de Manejo y Administración de Casos del Tribunal de Apelaciones (SUMAC-TA). El recurso fue depositado en el correo postal para su envío el 26 de noviembre de 2025. Véase Anejo 1 de la entrada núm. 1 en el SUMAC-TA.

Administrativos del DCR sostiene que el Programa de Servicios Religiosos está establecido de forma tal que, los servicios religiosos en la institución Ponce Principal se ofrecen por el personal de capellanía semanalmente, a través de la capilla en el horario aplicable y se extienden a las áreas de vivienda de la población.

Insatisfecho con la respuesta brindada por el ente administrativo recurrido, el recurrente nos plantea que, la respuesta brindada resulta ser arbitraria, irrazonable y contraria a derecho. Añade que, la agencia no consideró su obligación de garantizar el derecho constitucional de libertad de culto de los confinados, el cual no solo garantiza participar de servicios religiosos, sino también a orar y tener su lugar espiritual. Arguye que, al limitar el horario de apertura de la capilla, se discrimina contra la comunidad cristiana correccional. Por tal razón, nos solicita que le ordenemos al DCR reabrir la capilla institucional o adoptar medidas razonables que garantice el acceso continuo al lugar de oración.

Acaecidas varias incidencias procesales, innecesarias pormenorizar, el el 30 de enero de 2026, la parte recurrida por conducto de la Oficina del Procurador General, presentó *Escrito en Cumplimiento de Resolución* en el que solicitó la confirmación de la *Respuesta* recurrida. En apretada síntesis, la parte recurrida señaló que, el recurrente no le imputó al DCR error de derecho alguno. Empero, tal como expone la decisión mayoritaria, alegó que la respuesta es razonable y que se ajusta a la jurisprudencia y reglamentación aplicable, toda vez que, los servicios religiosos se ofrecen en la capilla de la institución, en el horario aplicable y se extienden a las áreas de vivienda de la población, tal como respondió el DCR. Arguyó que, el *Reglamento del Cuerpo Interdenominacional de Capellanía del* DCR, Reglamento Núm. 7938 del 26 de octubre de 2010 ("Reglamento 7938"), garantiza al menos un lugar para el culto de la comunidad correccional, de acuerdo con las particularidades

de cada institución y no una capilla en continua operación, como reclama el recurrente. Expuso que la posibilidad de destinar un lugar específico y exclusivo a los fines de proveer un espacio para el servicio religioso dependerá de los recursos y necesidades de cada institución correccional.

Además, argumentó que los confinados poseen aquellos derechos que no resulten incompatibles con el confinamiento y que pueden sufrir una disminución de sus derechos por las exigencias institucionales existentes en el régimen penal. Añadió que, según el propio Reglamento Núm. 7938, *supra*, la seguridad en las instituciones penales prima sobre la libertad de culto de la población que alberga. Arguyó que, si la limitación de horario de apertura de la capilla obedece a falta de oficiales, como alega el recurrente, la respuesta recurrida merece la mayor deferencia de este tribunal. Veamos.

En lo pertinente al asunto que nos ocupa, el Reglamento Núm. 7938, *supra*, lo siguiente:

**ARTÍCULO XII: CAPILLA INSTITUCIONAL**

1.  En cada institución se asignará un área para la celebración de los servicios religiosos. Se hará todo lo posible por proporcionar un área donde se ubique una capilla, de acuerdo con las facilidades existentes en cada institución. Se asignará un lugar seguro dentro de la capilla o en otro lugar pertinente, donde se puedan guardar los artículos propios del culto de cada religión.

2.  El lugar que se designe para llevar a cabo los servicios religiosos, es interdenominacional; será usada por todas las comunidades de fe, observando las siguientes normas:

    a.  La capilla no se identificará con una u otra denominación o creencia particular. Todo lo propio de cada denominación se retirará una vez concluya el servicio religioso.

    b.  Todos los grupos religiosos que usen dicha facilidad serán igualmente responsables por el buen orden y la limpieza de la misma.

    c.  La capilla será siempre lugar de oración y recogimiento espiritual. Cuando no haya

servicios programados, la oración personal y en silencio, respetando el derecho de todos los que deseen usar la misma.

d. La capilla se utilizará únicamente para toda actividad de índole religiosa, excepto en las instituciones donde sea un salón multiuso.

3. El personal correccional de la institución ayudará a mantener una actitud de respeto hacia el área de la capilla en todo momento. Bajo ningún concepto podrá un oficial correccional interrumpir un servicio religioso y entrar a la capilla en forma irreverente o con actitud irrespetuosa. De surgir algún incidente que ponga en grave riesgo la seguridad institucional, la oficialidad solicitará respetuosamente al capellán que interrumpa el servicio, quien procederá a así hacerlo, de modo que se salvaguarde la seguridad de los confinados participantes y del personal de capellanía. El capellán seguirá las instrucciones del superintendente o de su representante.

Ahora bien, tanto la Mayoría del Panel como la parte recurrida, pasan por alto que, con posterioridad a la aprobación del Reglamento Núm. 7938, *supra*, se aprobó la Ley 14-2025, conocida como la Ley del Derecho Fundamental a la Libertad Religiosa en Puerto Rico, según enmendada.

La Exposición de Motivos del precitado estatuto cita en parte:

La Primera Enmienda de la Constitución de Estados Unidos garantiza a toda persona en territorio americano el derecho a ejercer libremente su religión sin que sea obstaculizada, restringida o coartada arbitrariamente por el gobierno.

Por otro lado, la Constitución de Puerto Rico establece el derecho fundamental a la libertad religiosa, consignando que nuestro gobierno no aprobará ley alguna relativa al establecimiento de alguna religión en particular ni se prohibirá el libre ejercicio de cualquier culto religioso.

[.....]

Pero es importante subrayar que nuestras cláusulas religiosas deben seguir los desarrollos constitucionales, jurisprudenciales y estatutarios de Estados Unidos para poder atender correctamente el alcance de la libertad religiosa en Puerto Rico. Así las cosas, nuestro Tribunal Supremo de Puerto Rico se ha expresado sobre lo que constituye el derecho a la libertad religiosa o libertad de culto y ha expuesto que la libertad de culto es uno de los derechos fundamentales reconocidos por nuestra

Constitución.[11] Se reconoce que la sección 3 del artículo II de nuestra Constitución establece que no se prohibirá el libre ejercicio del culto religioso, garantizando así las prácticas religiosas a nivel individual o colectivo.[12] Como podemos observar, mediante jurisprudencia en Puerto Rico se ha reconocido y establecido que no puede haber una intervención gubernamental que limite o imposibilite el ejercicio de alguna actividad religiosa a no ser que sea para proteger la paz, la moral y el orden público. Por otro lado, es importante afirmar que nuestras cláusulas religiosas deben ser interpretadas según los parámetros federales (tanto jurisprudenciales como estatutarios); es decir, como dijo el Juez Trías Monje, estamos "enchufados" a los parámetros interpretativos judiciales federales sobre la libertad religiosa[13]

La Ley 14-2025, *supra*, es extensiva a la población confinada y en lo pertinente, en su Sección 4(b), define como centro de rehabilitación a aquella institución o programa de rehabilitación contratado por el Departamento de Corrección y Rehabilitación que atiende confinados como parte de su condena de reclusión y condiciones impuestas para el cumplimiento de una sentencia. Asimismo, dicho precepto legal, en la Sección 4 (g) define institución carcelaria como: toda institución de reclusión administrada y regida por el Departamento de Corrección y Rehabilitación, así como cualquier administrador privado contratado por este.

En particular, la Sección 12 de Ley 14-2025, *supra,* respecto al derecho fundamental a la libertad religiosa de personas confinadas en instituciones carcelarias o programas de rehabilitación, dispone lo siguiente:

A)    Disposiciones Generales:

---

[11] *Domínguez Castro v. ELA*, 178 DPR 1, 73 (2010). *Domínguez Castro v. ELA*, 178 DPR 1, 73 (2010).

[12] *Id.* en la pág. 637.

[13] Diario de Sesiones de la Convención Constituyente, págs. 1483-1484: "O sea, aquí hay dos principios básicos que se instituyen en esta sección. Uno es el principio de separación del Estado e Iglesia, tal como ha sido consignado en la Constitución federal y el cual seguirá su desarrollo normal vía las interpretaciones del Tribunal Supremo de los Estados Unidos. Naturalmente que [en] distintas situaciones que pudiésemos imaginar en estos momentos, pues sería difícil una contestación precisa [en] muchos [casos] a estas situaciones, porque estamos enchufados ante el sistema constitucional norteamericano en esta fase específica. O sea, son nuestras las garantías en cuanto a libertad de religión que se han instituido en la Constitución de los Estados Unidos. Estamos idénticamente, formando parte de ese sistema constitucional".

1. El Gobierno de Puerto Rico no impondrá una carga sustancial a la libertad religiosa de una persona confinada en una institución carcelaria o institucionalizada en un programa de rehabilitación como parte de su pena de reclusión a menos que demuestre que existe un interés apremiante del estado y que dicha regulación o limitación es el método menos oneroso para alcanzar ese interés apremiante.

2. El mero reclamo de un aspecto de seguridad no será por sí solo suficiente para cumplir con el mencionado estándar, teniéndose que considerar proactivamente acomodos razonables para cumplir con las disposiciones de la presente Ley.

3. Todo confinado tendrá derecho a recibir el cuidado y acompañamiento espiritual de un capellán, líder religioso o clérigo siempre que éste cumpla con las reglamentaciones de seguridad aplicables a cualquier otra visita que no sea religiosa, conforme al nivel de custodia y otras condiciones del confinado.

A la luz de lo antes expuesto, es forzoso concluir que la condición de confinamiento no puede, de por sí, ser razón suficiente para limitar el derecho a la libertad religiosa. Tal como reza el estatuto antes citado, la institución carcelaria tiene el deber ineludible de garantizarle a las personas confinadas el ejercicio de la libertad religiosa.

En el caso que nos ocupa, el Estado ampara su respuesta en el Reglamento 7938, el cual fue aprobado en 2010. Es la postura de la parte recurrida que, según el aludido Reglamento, "la seguridad en las instituciones correccionales prima sobre la libertad de culto de la población que albergan." Empero, mediante la Ley de Libertad Religiosa, *supra*, el Legislador dejó meridianamente claro que no impondrá una carga sustancial a la libertad religiosa de una persona confinada en una institución carcelaria o institucionalizada en un programa de rehabilitación como parte de su pena de reclusión, a menos que demuestre que existe un interés apremiante del estado y que dicha regulación o limitación es el método menos oneroso para alcanzar ese interés apremiante. Específicamente,

dispone el precitado estatuto de recientemente aprobación, que, el mero reclamo de seguridad no constituye por sí solo, razón suficiente para incumplir con el mencionado estándar, teniéndose que considerar proactivamente acomodos razonables para cumplir con las disposiciones de la presente Ley.

Al palio del derecho expuesto, los argumentos esbozados por la parte recurrida para, de cierto modo, limitar el ejercicio de la libertad religiosa del recurrente, a juicio de esta Juez, riñen con las disposiciones de la Ley del Derecho Fundamental a la Libertad Religiosa en Puerto Rico, según enmendada, *supra*.

En vista de anterior, en esta ocasión, no puedo sino disentir del dictamen de la Mayoría.

**GLORIA L. LEBRÓN NIEVES**
Juez de Apelaciones